UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                          CASE NO: 2:15-cr-124-FtM-UAMRM

JERMAINE OTIS DAMPIER

### **ORDER**[1]

This matter comes before the Court on the Defendant, Jermaine Otis Dampier's Motion to Suppress (Doc. #18) filed on December 4, 2015. The United States of America (Government) filed its Response in Opposition (Doc. #19) on December 18, 2015. On January 15, 2016, a hearing was held before the undersigned. The Government and the Defendant stipulated to the items of evidence that were introduced during the hearing.[2] The Government was represented by Assistant United States Attorney, Jeffrey F. Michelland. The Government called Sergeant Eric Gutridge, Fort Myers Police Department (FMPD) to testify during the hearing. The Defendant was present and represented by Assistant Federal Public Defender, James Lappan. After consultation with his attorney, the Defendant elected not to call any witnesses nor testify himself.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Government's Exhibit 1 – CD of FMPD radio traffic; 2A – Google Map aerial view of Deleon Street and Framingham Court; 2B – Google Map aerial view of Park Place Apartments; 2C – Google Map aerial view of south entrance to Park Place Apartments; 3A Photograph of firearm on street; 3B – Close-up photograph of firearm on street; 4 – Photograph of firearm, bullet, a loaded magazine; 5 – Dispatch Log. Defendant's Exhibit 1 – Fort Myers Police Department General Order 25.3; 2 – Video recording from body camera of Officer Conticelli.

**BACKGROUND**

On August 15, 2015, at approximately 8:30pm, Officers of the FMPD received an anonymous tip regarding a suspicious subject. The individual was later identified as the Defendant, Dampier. The anonymous source described this person as a black male using the name of Jermain or Jordan, wearing a red shirt and shorts with an unknown color baseball cap carrying a handgun, possessing drugs, and riding a bicycle on Deleon Street toward the south heading away from the Aquatic Center. The call was dispatched to Officer Lamar Campbell via police radio.

Sgt. Eric Gutridge responded to the call. Upon his arrival at 8:31pm. Sgt. Gutridge observed a black male wearing a red shirt and shorts with a black baseball cap riding a bicycle north on DeLeon Street.[3] Sgt. Gutridge noticed that the bicycle was not equipped with a red tail light visible from a distance of 600 feet as required by Fla. Stat. § 316.2065(7). Based upon the statutory violation, Sgt. Gutridge shined the patrol vehicle's spotlight on Dampier and directed him to pull over. Dampier ignored the directive and refused to stop. Sgt. Gutridge identified himself as a police officer, and again directed Dampier to stop. Dampier responded that "I didn't do anything wrong sir" and began pedaling faster in an apparent attempt to elude Sgt. Gutridge. Sgt. Gutridge exited his patrol vehicle and pursued Dampier on foot. As Dampier turned into the south entrance of the Place Apartments, Sgt. Gutridge noticed Dampier reach into his waist band, remove a firearm, and discard it toward the street.

Sgt. Gutridge informed FMPD dispatch that Dampier had discarded a firearm. Dampier continued to ride through the parking lot as Sgt. Gutridge pursued on foot while

---

[3] Sgt. Gutridge stated that the northerly direction was consistent with travel away from the Aquatic Center and that it appeared the caller was mistaken in their information regarding the direction of southerly travel.

continuing to direct him to stop. Dampier turned his bicycle alongside the building, abandoned it, and fled on foot. Dampier ran approximately twenty yards at which time he went down in the grass. Sgt. Gutridge caught up to Dampier, placed him in handcuffs, and placed him in the rear of Ofc. Conticelli's police vehicle.

Sgt. Gutridge returned to the area where he saw Dampier discard the firearm and found a silver semi-automatic pistol with black pistol grips laying in the road. The pistol was load and had one round chambered. Sgt. Gutridge read the Defendant his *Miranda* rights from an FMPD preprinted card. Dampier acknowledged his rights. Sgt. Gutridge questioned Dampier up to the point that Dampier replied that he no longer wanted to speak with Sgt. Gutridge.

Dampier was charged with carrying a concealed firearm in violation of Fla. Stat. § 790.01(2). He was also given a citation for failure to equip his bicycle with a rear red light visible from at least 600 feet, with resisting an officer without violence in violation of Fla. Stat. § 843.02. After conducting a criminal background check, Sgt. Gutridge was told that Dampier had been previously convicted of eighteen felonies and, therefore, subsequently charged him with possession of a firearm by a convicted felon in violation of Fla. Stat. § 790.23.

### DISCUSSION

Dampier moves to suppress the evidence gathered and statements made in connection with the stop and following incidents from the night of August 15, 2015. Dampier argues as follows: (1) there was no probable cause to conduct the initial traffic stop; (2) Dampier's statements were made in violation of his *Miranda* rights; and (3) any

statements made by Dampier were the fruit of the poisonous tree because the arrest itself was made in violation of Dampier's Fifth Amendment rights.

### (1) Whether there was Probable Cause to Stop Dampier

Dampier argues from *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) that a traffic stop constitutes a seizure. Dampier continues that a warrantless traffic stop is permissible only when there is probable cause to believe a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 809-10 (1996). The Government argues that probable cause existed because Dampier's bicycle did not have the proper equipment to operate at night as required by Florida law.

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop qualifies as a seizure under the Fourth Amendment and is subject to the constitutional imperative that it be reasonable under the circumstances. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996).

Generally, an officer's decision to stop a vehicle is reasonable when the officer has probable cause to believe that a traffic violation has occurred. *United States v. Trejo*, No. 8:12-CR-55-T-23EAJ, 2012 WL 2370651, at *3-4 (M.D. Fla. May 17, 2012) report and recommendation adopted, No. 8:12-CR-55-T-23EAJ, 2012 WL 2368899 (M.D. Fla. June 22, 2012) aff'd, 551 F. App'x 565 (11th Cir. 2014) and aff'd sub nom. *United States v. Ramirez*, 568 F. App'x 767 (11th Cir. 2014). Probable cause is determined by focusing on whether the circumstances, viewed objectively, justify the stop. *Trejo*, 2012 WL 2370651, at *3-4 (citing *Whren,* 517 U.S. at 813). The focus is not on the officer's subjective intent, and an officer's ulterior motives do not invalidate police conduct that is

4

otherwise justified by probable cause. *United States v. Holloman,* 113 F.3d 192, 194 (11th Cir.1997) (per curiam).

Florida law provides in pertinent part:

> (7) Every bicycle in use between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light visible from a distance of at least 500 feet to the front and a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear. A bicycle or its rider may be equipped with lights or reflectors in addition to those required by this section. A law enforcement officer may issue a bicycle safety brochure and a verbal warning to a bicycle rider who violates this subsection or may issue a citation and assess a fine for a pedestrian violation as provided in s. 318.18. The court shall dismiss the charge against a bicycle rider for a first violation of this subsection upon proof of purchase and installation of the proper lighting equipment.

Fla. Stat. § 316.2065(7).

In this instance, Sgt. Gutridge first saw Dampier at approximately 8:31pm on August 15, 2015. Sgt. Gutridge testified that it was dark. He further testified that when he passed Dampier he noticed that he did not have the proper red light visible from a distance of 600 feet on the back of his bicycle in violation of Florida law. Sgt. Gutridge's testimony was undisputed at the hearing and the video evidence submitted by the Government showed the back of Dampier's bicycle with no red light. As such, Sgt. Gutridge had probable cause to stop Dampier. *Miller v. Harget,* 458 F.3d 1251, 1259 (11th Cir. 2006).

Furthermore, based upon Sgt. Gutridge's undisputed testimony, he had sufficient probable cause to believe Dampier was about to commit a crime or was committing a crime. Absent a traffic violation, officers may detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person

has engaged in, or is about to engage in, criminal activity. *United States v. Powell,* 222 F.3d 913, 917 (11th Cir.2000); *See also United States v. Lyons*, 403 F.3d 1248, 1253 (11th Cir.), cert. denied, 126 S. Ct. 732 (2005) (holding probable cause exists when the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," the reasonable suspicion must be more than an inchoate, unparticularized hunch. *Id.* (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). The officer must have at least some minimum level of objective justification considering the totality of the circumstances. *Id.*

Sgt. Gutridge was responding to a call from FMPD dispatch to Ofc. Campbell in reference to a suspicious person, black male, riding a bicycle, wearing a red shirt, shorts, and a baseball cap of unknown color, carrying a gun, and in possession of drugs. Sgt. Gutridge testified that when saw Dampier on De Leon he fit the description of the suspicious individual reported by dispatch. This clearly establishes that Sgt. Gutridge had a reasonable suspicion to perform an investigatory stop on Dampier.

Further, when Sgt. Gutridge directed Dampier to stop, Dampier fled and discarded a firearm in sight of Sgt. Gutridge. Dampier's flight and tossing of the handgun as he fled, provided Sgt. Gutridge with sufficient probable cause to take Dampier into custody. *United States v. Joseph*, 445 F. App'x 301, 305 (11th Cir. 2011) (probable cause for arrest exists when a defendant flees from law enforcement and also drops contraband); *see*

*also United States v. Knight*, 336 F. App'x 900, 904 (11th Cir. 2009) (holding that a police officer had probable cause to pursue and arrest defendant where defendant dropped a concealed weapon upon fleeing after officer asked to speak with him); Fla. Stat. § 843.02 (an individual may be guilty of unlawfully obstructing an officer if he flees while knowing of the officer's intent to detain him and the officer is justified in making a stop).  Since Sgt. Gutridge had probable cause to stop and detain Dampier, Sgt. Gutridge did not violate Dampier's Fourth Amendment rights.  The Motion to Suppress for lack of probable cause is denied.

### (2) *Whether Dampier's* Miranda *Rights were Violated*

Dampier argues that any statements he made to Sgt. Gutridge should be suppressed because they were made in violation of his *Miranda* rights.  The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  A defendant's statement while the defendant is in custody may only be introduced into evidence if the defendant was given his *Miranda* rights prior to the interrogation. *United States v. Gomes,* 279 F. App'x 861, 868 (11th Cir.2008). These rights include the right to remain silent; that statements can and will be used against them in a court of law, that the individual has a right to an attorney during questioning; and if that individual cannot afford an attorney, one will be appointed. *Miranda v. Arizona,* 384 U.S. 436, 178–479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). However, before *Miranda* warnings are required, a defendant must be in custody and under interrogation. United States v. Herron, No. 2:14-CR-23-FTM-38, 2015 WL 867309, at *16 (M.D. Fla. Feb. 4, 2015) (citing *United States v. Castro,* 723 F.2d 1527, 1530 (11th Cir.1984) (per curiam)). A court must exclude from evidence any incriminating statements

made by an individual if, prior to making the statement, the individual was not warned of his right to remain silent and the right to obtain counsel, the so-called *Miranda* rights. *United States v. Luna–Encinas,* 603 F.3d 876, 880 (11th Cir.2010).

It is undisputed that Dampier was in custody for the purposes of *Miranda*. Sgt. Gutridge testified that he read Dampier his *Miranda* rights from a laminated card issued by the FMPD prior to asking him any questions. The video evidence supports, Sgt. Gutridges testimony. Sgt. Gutridge is heard asking Centilleni for his laminated Miranda rights card prior to speaking with Dampier. Sgt. Gutridge stated that Dampier agreed to waive his rights. When he asked Dampier about the firearm, Dampier told him he didn't know anything about a firearm. As Sgt. Dampier continued to question him about the firearm Dampier said he didn't want to talk anymore. At that point Sgt. Gutridge ended the interview.

Based upon the undisputed testimony offered by Sgt. Gutridge, the Court finds that Dampier was read his *Miranda* rights, waived them, and once he invoked his right to remain silent the interview ended. Therefore, the Motion to Suppress statements for *Miranda* rights violations is denied.

### (3) *Whether Dampier's Comments are the Fruit of the Poisonous Tree*

Dampier argues that his initial seizure was in violation of the Fourth Amendment. As such, Dampier argues that any statements he made are constitutionally inadmissible as derivative of the violations of his Fourth Amendment rights.

The Court finds that Dampier's stop and subsequent seizure by Sgt. Gutridge did not violate the Fourth Amendment. Since the Court has found no Fourth Amendment violation, there is no "poisonous tree" which would require suppression of derivative

evidence. *United States v. Joyner*, No. 2:15-CR-29-FTM-29MRM, 2015 WL 7752874, at *7 (M.D. Fla. Dec. 2, 2015) (citing *Colorado v. Spring*, 479 U.S. 564, 571 (1987) (if there is no poisonous tree, there can be no fruit to suppress).

## **CONCLUSION**

Sgt. Gutridge had sufficient probable cause to stop Dampier on August 15, 2015. Further, it is clear based upon the evidence that Sgt. Gutridge read Dampier his *Miranda* rights after Dampier was taken into custody and prior to any questioning. There was no violation of Dampier's rights. As such, the Motion to Suppress is due to be denied.

Accordingly, it is now

**ORDERED:**

Defendant, Jermaine Otis Dampier's Motion to Suppress (Doc. #18) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 20th day of January, 2016.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record